**ROBERT L. SWAIN**
Attorney at Law
California Bar No. 144163
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1494
Facsimile: (619) 544-1473
e-mail: rls11@aol.com

Attorney for Defendant **Corrado**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HON. BARRY TED MOSKOWITZ**)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. **08-CR-2018-BTM** |
| Plaintiff, ) | Date: July 25, 2008 |
| ) | Time: 1:30 p.m. |
| v. ) | |
| ) | **NOTICE OF MOTIONS AND MOTIONS TO:** |
| **MARCO CORRADO**, ) | **1) COMPEL DISCOVERY;** |
| Defendant. ) | **2) REVEAL INFORMANTS; AND** |
| ) | **3) LEAVE TO FILE FURTHER MOTIONS** |

TO: KAREN HEWITT, UNITED STATES ATTORNEY, and
MICHAEL CROWLEY, ASSISTANT UNITED STATES ATTORNEY

PLEASE TAKE NOTICE that on Friday, July 25, 2008, at 1:30 p.m., or as soon thereafter as counsel may be heard, the defendant, Marco Corrado, by and through his counsel, Robert L. Swain, will move this Court to grant the above-entitled motions.

//
//
//
//
//
//
//

## MOTIONS

The defendant, Marco Corrado, by and through his counsel, Robert L. Swain, and pursuant to Rules 6(e), 12, and 16 of the Federal Rules of Criminal Procedure and the Fourth, Fifth and Sixth Amendments to the United States Constitution, and all applicable local rules, hereby moves this court to

1) compel further discovery;

2) reveal confidential informants; and

3) leave to file further motions.

These motions are based upon the attached memorandum, the files and records in the above-captioned matter, and any and all other evidence brought before this court before or during the hearing on this motion.

Respectfully submitted,

/s/ Robert L. Swain

Dated: July 7, 2008         **ROBERT L. SWAIN**
Attorney for Defendant **Corrado**

**ROBERT L. SWAIN**
Attorney at Law
California Bar No. 144163
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1494
Facsimile: (619) 544-1473
e-mail: rls11@aol.com

Attorney for Defendant **Corrado**

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## (**HON. BARRY TED MOSKOWITZ**)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal No. **08-CR-2018-BTM** |
| Plaintiff, | ) Date: July 25, 2008 |
| | ) Time: 1:30 p.m. |
| v. | ) |
| | ) **STATEMENT OF FACTS AND** |
| **MARCO CORRADO**, | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES IN SUPPORT OF** |
| Defendant. | ) **DEFENDANT'S MOTIONS** |
| | ) |

**I.**

**STATEMENT OF FACTS**

The statement of facts and the facts discussed in the memorandum of points and authorities, are strictly for the purposes of these motions and are not to be considered admissions by the defendant, Marco Corrado. Mr. Corrado reserves the right to contradict, explain, amplify, or otherwise discuss any of the facts mentioned here at a pre-trial motion hearing or trial.

On June 19, 2008, Mr. Corrado was charged along with three other co-defendants in a two count indictment charging conspiracy to distribute a controlled substance, over 50 grams of methamphetamine, and possession with the intent to distribute a controlled substance, over 50 grams of methamphetamine. Mr. Corrado was arrested on June 4, 2008, as he was returning back to the United States across the border in San Ysidro.

Mr. Corrado is a 39-year-old life-long resident of San Diego, where he grew up and

did all his schooling. He has been married for five years to his wife Cynthia, and has been working in the construction field.

The offense is alleged to have occurred in April, 2007, pursuant to a lengthy government investigation. It is therefore imagined that there will be a substantial amount of discovery considering the nature of the case, the length of the investigation and the number of defendants, and the defense has not yet been notified that it can begin the process of ordering discovery which will likely consist of tapes, transcripts, recordings, documents and reports.

## II.

## MOTION TO COMPEL FURTHER DISCOVERY

Mr. Corrado requests the following discovery pursuant to Fed. R. Crim. P. 12(b)(4) and 16:

(1) all written and oral statements made by Mr. Corrado. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Corrado are contained. It also includes the substance of any oral statements which the government intends to introduce at trial. These are all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and (B) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Mr. Corrado also requests any response to any <u>Miranda</u> warnings which may have been given to him. See <u>United States v. McElroy</u>, 697 F.2d 459 (2d Cir. 1982);

(2) all documents, statements, agents' reports, and tangible evidence favorable to Mr. Corrado on the issue of **guilt or punishment** and/or which affects the credibility of the government's case. This evidence must be produced pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976);

(3) all evidence, documents, records of judgments and convictions, photographs and tangible evidence, and information pertaining to any prior arrests and convictions or prior bad acts. Evidence of prior record is available under Fed. R. Crim. P. 16(a)(1)(D). Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(E) and Fed. R. Evid.

1  404(b) and 609.  Mr. Corrado specifically requests reasonable notice pursuant to Fed. R. Evid
2  404(b) of at least four weeks prior to trial, of any evidence the government intends to
3  introduce at trial under this rule;
4       (4)  all evidence seized as a result of any search, either warrantless or with a warrant,
5  in this case.  He also specifically requests copies of all photographs, videotapes or recordings
6  made in this case.  This is available under Fed. R. Crim. P. 16(a)(1)(E);
7       (5)  all arrest reports, investigator's notes, memos from arresting officers, sworn
8  statements and prosecution reports pertaining to Mr. Corrado, including any copies of any
9  applications for arrest warrants issued in this case, including any affidavits in support, and
10 any warrants issued thereon.  These are available under Fed. R. Crim. P. 16(a)(1)(E) and Fed.
11 R. Crim. P. 26.2 and 12(I);
12      (6)  the personnel file of the interviewing agent(s) containing any complaints of
13 assaults, abuse of discretion and authority and/or false arrest.  Pitchess v. Superior Court, 11
14 Cal. 3d. 531, 539 (1974).  In addition, the defense requests that the prosecutor examine the
15 personnel files of all testifying agents, and turn over Brady and Giglio material reasonably in
16 advance of trial.  United States v. Henthorn, 931 F.2d 29, 30-31(9th Cir. 1991).  If the
17 prosecutor is unsure as to whether the files contain Brady or Giglio material, the files should
18 be submitted to the Court, in camera.  Id.  The prosecution should bear in mind that there
19 exists an affirmative duty on the part of the government to examine the files.  Id.;
20      (7) any and all statements made by any other charged or uncharged co-participants.
21 The defense is entitled to this evidence because it is material to preparation for the
22 defendant's case and potentially Brady material.  Also, insofar as such statements may be
23 introduced, they are discoverable. Fed. R. Crim. 16(a)(1)(E) and Brady.  This evidence must
24 be produced pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs,
25 427 U.S. 97 (1976);
26      (8)  Mr. Corrado requests copies of any and all audio/video tape recordings made by
27 the agents in this case and any and all transcripts, including taped recordings of any
28

3

conversations of any of the agents involved in this case.  This evidence is available under Fed. R. Crim. P. 16(a)(1)(E);

(9)  Mr. Corrado specifically requests the name and last known address of each prospective government witness.   See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 583 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses).

(10)  all other documents and tangible objects, including photographs, books, papers, documents, photographs, or building or places or copies of portions thereof which are material to Mr. Corrado's defense or intended for use in the government's case-in-chief or were obtained from or belong to Mr. Corrado. Rule 16(a)(1)(E);

(11) all results or reports of scientific tests or experiments, or copies of which are within the possession, control, or custody of the government or which are known or become known to the attorney for the government, that are material to the preparation of the defense, including the opinions, analysis and conclusions of experts consulted by law enforcement including computer and accounting specialists in the instant case.  These must be disclosed, once a request is made, even though obtained by the government later, pursuant to Fed.R.Crim.Pro. 16(a)(1)(F) and (G).

(12)  any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, agreement to execute a voluntary return rather than deportation or any other kind of agreement or understanding between any prospective government witness and the government (federal, state and local), including any implicit understanding relating to criminal or civil income tax liability.  United States v. Shaffer, 789 F.2d 682 (9th Cir. 1986); United States v. Risken, 788 F. 2d 1361 (8th Cir. 1986); United States v. Luc Levasseur, 826 F.2d 158 (1st Cir. 1987);

(13) any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the

1 advice not followed.  Brown v. Duggen, 831 F.2d 1546, 1558 (11th Cir. 1986) (evidence that
2 witness sought plea bargain is to be disclosed, even if no deal struck); Haber v. Wainwright,
3 756 F.2d 1520, 1524 (11th Cir. 1985);

4     (14) any evidence that any prospective government witness has engaged in any
5 criminal act whether or not resulting in a conviction.  See Rule 608(b), Federal Rules of
6 Evidence and Brady;

7     (15) any evidence that any prospective witness is under investigation by federal, state
8 or local authorities for any criminal conduct.  United States v. Chitty, 760 F.2d 425 (2d Cir.),
9 cert. denied, 474 U.S. 945 (1985); and,

10     (16)  any evidence, including any medical or psychiatric report or evaluation, tending
11 to show that any prospective witness' ability to perceive, remember, communicate, or tell the
12 truth is impaired; and any evidence that a witness has ever used narcotics or other controlled
13 substance, or has ever been an alcoholic.  United States v. Strifler, 851 F.2d 1197 (9th Cir.
14 July 11, 1988); Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980);

15     (17) the name and last known address of every witness to the crime or crimes charged
16 (or any of the overt acts committed in furtherance thereof) who will not be called as a
17 government witness.  United States v. Cadet, 727 F.2d 1469 (9th Cir. 1984);

18     (18)  the name of any witness who made an arguably favorable statement concerning
19 the defendant or who could not identify her or who was unsure of his identity, or
20 participation in the crime charged.  Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968);
21 Chavis v. North Carolina, 637 F.2d 213, 223 (4th Cir. 1980); James v. Jago, 575 F.2d 1164,
22 1168 (6th Cir. 1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1975);

23     (19) Mr. Corrado requests a transcript of the grand jury testimony and rough notes of
24 all witnesses expected to testify at the motion hearing or at trial.  This evidence is
25 discoverable under Fed. R. Crim. P. 12(I) and 26 and will be requested.

26     (20) Jencks Act Material.  The defense requests all material to which defendant is
27 entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial.  A
28

1 verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under §3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991), the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act. The defense requests pre-trial production of Jencks material to expedite cross-examination and to avoid lengthy recesses during the pre-trial motions hearings or trial.

Disclosure, as it becomes known to the government, of all material currently in its possession that it contemplates using in *any phase of the trial*. This means as direct evidence in its case in chief, as impeachment evidence in the course of cross examination, or in rebuttal. The Court is requested to order a deadline barring any use, for any purpose at trial, of materials not reasonably disclosed in advance of trial. Drawing a bright line for the government will not only encourage compliance, but will greatly reduce the prospect for disruptive discovery disputes in the course of trial. And full discovery will make for more informed and focused counsel on both sides of the courtroom, thus making for a more orderly trial. Finally, a discovery order with teeth to it will impress upon the government its obligation to undertake a diligent search for *Brady* material.

This Court plainly has the authority to order the government to provide discovery by a certain date, and bar the use of any evidence not disclosed after that date. This authority is expressly conferred under Fed. R. Crim. P. 16(d)(2), and has been upheld in a number of cases, even against defendants. *See, e.g.* Taylor v. Illinois, 484 U.S. 400, 108 S. Ct. 646 (1988) (exclusion of surprise defense witness for discovery violation doe not violate defendants rights); United States v. Aceves-Rosales, 832 F.2d 1155 (9th Cir. 1987) (not abuse of discretion to bar defense use of evidence discovered and subpoenaed the day before trial but not disclosed until after government had rested in violation of Rule 16) *and* United States v. Burgess, 791 F.2d 676 (9th Cir. 1986) (government barred from making any use, including use for impeachment, of non-disclosed inculpatory statement made to DEA agent).

1  The Court's authority to enforce such orders against the government by excluding evidence is
2  beyond dispute. <u>United States v. Roybal</u>, 566 F.2d 1109, 1110-11 (9th Cir. 1977); *see also*
3  <u>United States v. Gatto</u>, 763 F.2d 1040, 1046-47 (9th Cir. 1985) (after citing authority to
4  exclude evidence under Rule 16(d)(2), the "only question" was whether the evidence not
5  produced was discoverable under former Rule 16(a)(1)(C) although in possession of state
6  law enforcement); *and* <u>United States v. Schwartz</u>, 857 F.2d 655 (9th Cir. 1988) (question
7  was whether government violated discovery order, thus warranting the sanction).
8       A discovery schedule, such as a disclosure deadline, is authorized by Rule 16(d)(2),
9  and will serve to avoid delay, conserve scarce judicial resources, prevent surprise, and further
10 the search for truth at trial.  These purposes are central objectives of the discovery process.
11 <u>See</u> Fed. R. Crim. P. 16, advisory committee note, 1974 amendments, <u>and</u> H.R. Report No.
12 247, 94th Cong., 1st Sess. 13 (1975).  Therefore, the Court should impose a discovery
13 schedule and bar the introduction of evidence not disclosed by that date.
14      The Court has wide authority to regulate the discovery process under Fed. R. Crim. P.
15 16(d)(2).  It may "specify the time, place and manner of making the discovery and inspection
16 and may prescribe such terms and conditions as are just." *Id.*  This authority in turn springs
17 from Rule 16(a)(1)(A)-(E) which requires the government to disclose three broad categories
18 of evidence: the defendants statements, 16(a)(1)(A) and (B); evidence material to the
19 preparation of the defense, 16(a)(1)(E); or evidence which the government intends to
20 introduce in its case in chief, 16(a)(1)(E).  In addition, the Fifth Amendment to the
21 Constitution requires the government to look for and disclose exculpatory information
22 favorable to the accused on the issue of guilt or innocence, or in mitigation of sentence.
23 <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194 (1963).
24      Because the Court has the power to order production under Rule 16 and under *Brady*,
25 it has the ancillary supervisory power to insure that the rights accorded under the rule and the
26 constitution be enforced "when there is a clear basis in law or fact for doing so." <u>United</u>
27 <u>States v. Jennings</u>, 960 F.2d 1488, 1491 (9th Cir. 1992).  *See also* <u>United States v. Gatto</u>, 763
28

F.2d 1040 (9th Cir. 1985) (relied on in Jennings) *and* United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992) (authority to compel government to review personnel files, but no authority to compel non-prosecution lawyers or agency department heads to do it). The materials requested here are all plainly available, if they exist, under either Rule 16 or the Brady line of cases.

Fed. R. Crim P. 16(a)(1)(E) requires the government to allow the defense to "inspect and copy or photograph" evidence which is either material, will be introduced at trial, or which was obtained from, or belonged to the defendant. As noted, Rule 16(d)(2) grants this Court full discretionary, supervisory power over "the time, place and manner of making the discovery or inspection" referred to in 16(a)(1)(E), and authorizes the Court to "prescribe such terms and conditions as are just" in that regard. This includes the obligation of the government to promptly search its files, to avoid last minute disclosure or the suppression of evidence (advertent or inadvertently). The 1966 Advisory Notes accompanying the initial appearance of the rule (then designated as 16(b)) speak of the need to "define and limit the scope of ***the government's obligation to search its files*** while meeting the legitimate needs of the defendant." (emphasis added) And in 1974 the rule was expanded and redesignated in its current form. In addition to making discovery mandatory when the defendant demonstrated that the materials would be material, the Committee noted that

> Limiting the rule to situations in which the defendant can show that the evidence is material seems unwise. It may be difficult for a defendant to make this showing if she does not know what the evidence is. For this reason, subdivision (a)(1)(C) also contains language to compel disclosure if the government intends to use the property as evidence at trial or if the property was obtained from or belongs to the defendant.

1974 Advisory Notes to Fed. R. Crim. P. 16(a)(1)(C). In this case, however, the defense has shown, as best it can at this juncture, what the evidence is, and what it's looking for. Determining if the materials exist and locating them is the government's responsibility.

The government's response that it has looked and does *not* have information or evidence is almost as important as the disclosure of the material. The significance of the request-response process was underscored in United States v. Bagley, 473 U.S. 667, 105

S.Ct. 3375, 87 L.Ed.2d 481 (1985), where the Supreme Court observed:

> The Government notes [in its brief] that an incomplete response to a specific request [from the defense for <u>Brady</u> material] not only deprives the defense of certain evidence, but also has the effect of representing to the defense that the evidence does not exist. In reliance on this misleading representation, the defense might abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued.
> We agree that ***the prosecutor's failure to respond fully to a <u>Brady</u> request may impair the adversary process*** in this manner. And the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption.

<u>Bagley</u>, 105 S. Ct. at 3384. Thus defendants have a right to rely upon the government to fulfill its obligation to produce <u>Brady</u> material, particularly where the material has been specifically requested. That obligation is not contingent on whether the defense is astute enough, or has sufficient resources to determine the material exists before it is requested, or locate it for the government to retrieve. The government is affirmatively obligated to report any exculpatory evidence in its possession, and is constructively charged with knowledge of what it possesses.

Plainly, the government is obligated to inform the defense of exculpatory evidence even absent a request. <u>Brown v. Borg</u>, 951 F.2d 1011, 1015 (9th Cir. 1991) (failure to disclose murder victim's property had not been stolen in course of murder required reversal where robbery was urged by prosecutor as motive). This obligation extends to any evidence ***in the possession of the prosecutor or the prosecuting federal agencies***. <u>United States v. Bryan</u>, 868 F.2d 1032 (9th Cir. 1989). The point is important in a case, such as this one, where more than one agency is involved, and the scope of the law enforcement activity is broad. This case involves at least the FBI, and DEA agents. It may also involve local law enforcement districts.

In fact, the facts of <u>Bryan</u> are analogous. Bryan sought discovery of out-of-district documents in possession of various federal agencies that had participated in the investigation of his nationwide distribution of questionable tax shelters. She was charged with 20 counts of mail fraud. The district court agreed with Bryan that she was entitled to some of the

1   materials she described in his discovery request under Brady and Fed. R. Crim. P.
2   16(a)(1)(C), but limited the discovery to material in the District of Oregon. The government
3   argued that it was not obligated to disclose any evidence not subjectively known to, and in
4   the possession of the prosecutor. 868 F.2d 1033-1036. The government lost.
5       Instead, Bryan ruled that *any evidence in the possession of any federal agency*
6   *involved in the investigation of the defendant was **known to and in the possession of the***
7   ***prosecutor***. Specifically, the court said:

> the scope of the government's obligation under Rule 16(a)(1)(C) should turn on the extent to which the prosecutor has knowledge of and access to the documents sought by the defendant in each case. the prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant. ... As with Rule 16(a)(1)(C)'s definition of government, we see no reason why the prosecutor's obligation under Brady should stop at the border of the district. If a federal prosecutor has knowledge of and access to exculpatory information as defined in Brady and its progeny ... then the prosecutor must disclose it to the defense.

13  Bryan, 868 F.2d 1036-1037. In this case there is no question but that allegations of drug
14  trafficking has attracted the attention of the government on many levels, and in many places.
15  The government must be encouraged to determine what it knows about this case and disclose
16  all that it is required to under Rule 16 and Brady as promptly as possible.

> By requiring the prosecutor to assist the defense in making its case, the Brady rule represents a limited departure from a pure adversary model. The Court has recognized, however, that the prosecutor's role transcends that of an adversary: She is the representative not of an ordinary party to a controversy, but of a sovereignty whose interest in a criminal prosecution is not that it shall win a case, but that justice shall be done.

Bagley, 105 S. Ct. 3380, n. 6, *quoting* Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314 (1935) *and citing* Brady v. Maryland, 373 U.S. at 87-88, 83 S. Ct. at 1196-1197. Mere ignorance of the material is no excuse.[1] This is why the Supreme Court in Bagley replaced the no-request, general-request, and specific-request standard with the

---

[1] "Accordingly, when exculpatory evidence is withheld, attention focuses on its effect on the defendant's right to due process; the prosecutor's intentions are irrelevant." Brown v. Borg, 951 F.2d 1015, *citing* United States v. Agurs, 427 U.S. 97, 110, 96 S. Ct. 2392, 2400, 49 L. Ed.2d 342 (1976) *and* Thomas v. Cardwell, 626 F.2d 1375, 1382 n.24 (9th Cir. 1980).

1  materiality analysis used in Strickland v. Washington, 446 U.S. 668, 104 S. Ct. 2052, 80 L.
2  Ed.2d 674 (1984). As described in Bagley, the Strickland analysis focuses on the harm
3  caused by the failure to report the exculpatory evidence, rather than the relative faults of
4  counsel for either not directing the government properly to the evidence, or in the alternative,
5  for the government to fail to provide the information despite a specific request.[2]

6  Accordingly, Mr. Corrado requests that the court order discovery as outlined above,
7  and as further discussed in the discovery motions filed by co-defendants, joined in by Mr.
8  Corrado. The court is respectfully requested to order the government to affirmatively search
9  for all subject material, and disclose it by a reasonable date certain, or as soon as it becomes
10 aware of such material. The Court is also requested to establish a date beyond which the
11 government cannot introduce nondisclosed evidence absent some extraordinary showing.

### III.

### THIS COURT SHOULD ORDER THE GOVERNMENT TO REVEAL THE IDENTITY OF THE CONFIDENTIAL INFORMANTS.

It is well established that where an informant's testimony may be "relevant and helpful to the defense of an accused" his identity must be disclosed. Roviaro v. United States, 353 U.S. 53, 60-61 (1957). Under Roviaro, there is no fixed rule with respect to disclosure of a confidential informant, although four considerations are relevant: (1) the crime charged; (2) the possible offenses; (3) the possible significance of the informant's testimony; and (4) other relevant factors. Id. at 62-64. In a case such as this, the testimony of that informant is vital to the defense. Even if the informants may not be called to testify for the government, the defense may call them. Lopez-Hernandez v. United States, 394 F.2d 820 (9th Cir. 1968); Velarde-Villarreal v. United States, 354 F.2d 9 (9th Cir. 1965).

---

[2] Although Bagley makes it clear that more harm flows from a specific request which is improperly ignored by the government because the defendant is more likely to assume that evidence does not exist when he or she specifically asks for it and the government denies that it exists.

1  **A.    Because the Informants Were Percipient Witnesses to, or Actively Participated
2        in, the Transactions Leading to the Commission of the Alleged Crime, the
         Identity of the Informants Must be Revealed.**

3       Here, it can be presumed that there are informants or cooperating witnesses who were
4  percipient witnesses, so under Roviaro, Velarde-Villarreal, and Lopez-Hernandez, the
5  identity and whereabouts of the individuals must be revealed.

6  **B.    The Government Must Produce the Confidential Informants Prior to Trial and
        Mr. Corrado Should be Permitted to Interview Them Prior to Trial.**

7       The government's obligation is not fully satisfied by merely disclosing the identity and
8  location of the confidential informants. Mr. Corrado specifically requests that the informants
9  be produced. The government has the duty to produce the informants or to show that, despite
10 reasonable efforts, it was not able to do so. United States v. Hart, 546 F.2d 798, 799 (9th Cir.
11 1976) cert. denied sub nom, Robles v. United States, 429 U.S. 1120 (1977).

12      Mr. Corrado respectfully requests that the Court permit defense counsel to question
13 the informants before trial. Mr. Corrado should also be permitted to interview the informants
14 well in advance of trial. See United States v. Hernandez, 608 F.2d 741 (9th Cir. 1979);
15 United States v. Bower, 575 F.2d 499 (5th Cir.), cert. denied, 439 U.S. 983 (1978).

16      In Callahan v. United States, 371 F.2d 658 (9th Cir. 1967), the court held that both the
17 defense and the prosecution had the right to interview witnesses before trial, and that
18 exceptions to such rules were justifiable only by the clearest and most compelling
19 circumstances. It is beyond dispute that witnesses to a crime are the property of neither the
20 prosecution nor the defense, and that both sides have an equal right and should have and
21 equal opportunity to interview them.

22      For the reasons cited above, the government is required to disclose the identity of all
23 cooperating witnesses and their whereabouts, and to make them available for the defense.
24 Failure to do so would require dismissal of the case.

25 **C.    In Camera Hearing.**

26      This Court has considerable discretion in deciding whether an in camera hearing is
27 necessary in determining when the government must release the informant's name and
28

1 whereabouts to the defense.  See, e.g., United States v. Ordonez, 722 F.2d 530, 540-41 (9th
2 Cir. 1983); United States v. Rawlinson, 487 F.2d 5, 7-8 n.4 (9th Cir. 1973), cert. denied, 415
3 U.S. 984 (1974).  The Rawlinson court held that an in camera hearing was an appropriate
4 means for determining whether the informant's identity and testimony would be relevant and
5 helpful to the defense.  While the court in United States v. Anderson, 509 F.2d 724 (9th Cir.
6 1974), cert. denied, 420 U.S. 910 (1975), refused to establish a fixed rule that requires
7 disclosure of an informant's identity when probable cause is at issue, it did approve the
8 holding of an in camera hearing to which the defense counsel, but not the defendant, is
9 admitted.

10      In Ordonez, the court stated that "[t]o insure that the informer is subject to a vigorous
11 or searching examination, some trial courts have permitted the defense counsel to submit a
12 set of questions to be propounded by the court." 722 F.2d at 541 (citations omitted).  Further,
13 the court held that the "procedure selected by the trial court should provide a substantial
14 equivalent to the rights available to a criminal defendant under the Fifth and Sixth
15 Amendments."  722 F.2d at 540-41.

16      Thus, the identity of the informants should be revealed well in advance of trial, or in
17 the alternative, this Court should conduct an in camera hearing and allow defense counsel to
18 participate in order to determine whether the informants' testimony is helpful and material to
19 the defense.

20      Mr. Corrado requests the opportunity to interview the government informants
21 sufficiently in advance of trial so that any further investigation that may be necessary may be
22 accomplished without interrupting the trial itself.

23 **D.     Mr. Corrado is Entitled to Information Regarding The Confidential Informants.**
24      With respect to any informant or witness that the government intends to rely upon at
25 trial, Mr. Corrado requests disclosure of the following impeaching information.
26      1) Any and all records and information revealing prior felony convictions, convictions
27 for a crime involving false statements or dishonesty, or juvenile adjudications attributed to
28

1 the informant, including but not limited to relevant "rap sheets."  See United States v.
2 Alvarez-Lopez, 559 F.2d 1155 (9th Cir. 1977); Fed. R. Evid. 609.

3      2) Any and all records and information revealing prior misconduct or bad acts
4 attributed to the informant, including, but not limited to, any acts of misconduct conducted by
5 them.  Fed. R. Evid. 608(b)(3); Weinstein's Evidence 608[5] at 608-25 (1976).

6      3) Any and all consideration or promises of consideration given to the informant or
7 expected or hoped for by them.  By "consideration," Mr. Corrado refers to absolutely
8 anything, whether bargained for or not, which arguably could be of value or use to her or to
9 persons of concern to them.  This request includes, but is not limited to formal or informal
10 and direct or indirect leniency, favorable treatment or recommendations, or other assistance
11 with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil,
12 tax court, Internal Revenue Service, Court of Claims, administrative, or other dispute with
13 the United States.  See, e.g., Guam v. De la Rosa, 644 F.2d 1257, 1259 (9th Cir. 1980)
14 (testimony secured by promise not to prosecute in exchange for cooperation).

15      "Consideration" also encompasses any favorable treatment or recommendations with
16 respect to criminal, civil or tax immunity grants, relief from forfeiture, payments of money,
17 permission to keep fruits of criminal activity including cash, vehicles, aircraft, rewards or
18 fees, witness fees and special witness fees, provisions of food, clothing, shelter,
19 transportation, legal services or other benefits, placement in a "witness protection program,"
20 and anything else that arguably could reveal an interest, motive, or bias in them in favor of
21 the government or against the defense, or which could act as an inducement to testify or to
22 color testimony.  See Bagley v. Lumpkin, 719 F.2d at 1462-64; United States v. Mayer, 556
23 F.2d 245, 248 (5th Cir. 1977); United States v. Partin, 493 F.2d 750, 757 (5th Cir. 1974);
24 United States v. Garza, 574 F.2d 298, 301-02 (5th Cir. 1978).

25      4) Any and all threats, express or implied, direct or indirect, or other coercion made or
26 directed against the informant, criminal prosecutions, investigations, or potential
27 prosecutions pending, or which could be brought against them, any probationary, parole,
28

deferred prosecution, or custodial status of the witness and any civil, tax court, court of claims, administrative, or other pending or potential legal disputes or transactions with the government or over which the government has a real, apparent, or perceived influence. See Davis v. Alaska, 415 U.S. 308 (1974); United States v. Alvarez-Lopez, 559 F.2d 1155 (9th Cir. 1977); United States v. Sutton, 542 F.2d 1239 (4th Cir. 1976).

5) The existence and identification of each occasion on which the informant has testified before the court, grand jury, or other tribunal or body in connection with this or other similar cases. See Alvarez-Lopez, 559 F.2d at 1155; Johnson v. Brewer, 521 F.2d 556 (8th Cir. 1975).

6) Any and all records and information which arguably could be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the government's evidence or which arguably could lead to such records or such information. This request includes any evidence tending to show the narcotic habits of the informant at the time of relevant events, see, e.g., United States v. Bernard, 625 F.2d 854, 858-59 (9th Cir. 1980), and the informant's personal dislike of the defendant. See Guam v. De la Rosa, 644 F.2d 1257 (9th Cir. 1980); United States v. Haggett, 438 F.2d 396 (2d Cir. 1969), cert. denied, 402 U.S. 946 (1971).

7) The names and criminal numbers of any and all other criminal cases, state or federal, in which the informant has been involved either as informant or as defendant. Any prior criminal conduct on the part of the informant either as informant or as a defendant is relevant in establishing a possible defense of entrapment.

Mr. Corrado is making these multiple requests because, in order to properly prepare a defense in this matter, it is important that the defense be aware of all information related to the informants' credibility and background. Giglio v. United States, 405 U.S. 150 (1972); United States v. Ray, 731 F.2d 1361 (9th Cir. 1984).

## IV.

## **REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

Mr. Corrado requests that he be allowed time to file additional motions as may become necessary and as discovery is disclosed and reviewed.

## V.

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that the court grant the above motions.

Respectfully submitted,

/s/ Robert L. Swain

Dated: July 7, 2008

**ROBERT L. SWAIN**
Attorney for Defendant **Corrado**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HON. BARRY TED MOSKOWITZ**)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal No. **08-CR-2018- BTM** |
| Plaintiff, | ) |
| v. | ) **PROOF OF SERVICE** |
| **MARCO CORRADO,** | ) |
| Defendant. | ) |

    I, ROBERT L. SWAIN, am a citizen of the United States and am at least eighteen years of age. My business address is 964 Fifth Avenue, Suite 214, San Diego, California, 92101.

    I am not a party to the above-entitled action. I served the within **NOTICE OF MOTIONS AND MOTIONS TO COMPEL DISCOVERY, TO REVEAL INFORMANTS, AND LEAVE TO FILE FURTHER MOTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS**, on the following parties by electronically filing the foregoing with the clerk of the District Court using its ECF System, which electronically notifies them.

    Judge Barry Ted Moskowitz efile_Moskowitz@casd.uscourts.gov.

    Assistant United States Attorney Michael.Crowley@usdoj.gov

    I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 7, 2008

                                          /s/   Robert L. Swain
                                          ROBERT L. SWAIN

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HON. BARRY TED MOSKOWITZ**)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal No. **08-CR-2018- BTM** |
| Plaintiff, | ) |
| v. | ) **PROOF OF SERVICE** |
| **MARCO CORRADO,** | ) |
| Defendant. | ) |

I, ROBERT L. SWAIN, am a citizen of the United States and am at least eighteen years of age.  My business address is 964 Fifth Avenue, Suite 214, San Diego, California, 92101.

I am not a party to the above-entitled action.  I served the within **NOTICE OF MOTIONS AND MOTIONS TO COMPEL DISCOVERY, TO REVEAL INFORMANTS, AND LEAVE TO FILE FURTHER MOTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS**, on the following parties by electronically filing the foregoing with the clerk of the District Court using its ECF System, which electronically notifies them.

Judge Barry Ted Moskowitz efile_Moskowitz@casd.uscourts.gov.

Assistant United States Attorney Michael.Crowley@usdoj.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 7, 2008

/s/   Robert L. Swain
ROBERT L. SWAIN